2015 COA 40

**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Joseph Robert MONTANTE, Defendant-Appellant.**

**Court of Appeals No. 13CA1858**

Colorado Court of Appeals, Div. VII.

Announced April 9, 2015

534

Cynthia H. Coffman, Attorney General, Kevin E. McReynolds, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Schaden & Cassinis, PLLC, Richard F. Schaden, Casey Schaden Cassinis, Broomfield, Colorado, for Defendant–Appellant

Opinion by JUDGE BERGER

¶ 1 Defendant, Joseph Robert Montante, appeals the judgment of conviction entered on a jury verdict finding him guilty of attempt to influence a public servant. Defendant contends that (1) the trial court erred in denying his motion to dismiss on the theory that the medical marijuana registry fraud statute bars prosecution under a general criminal statute; (2) the court erred in rejecting a lesser nonincluded offense instruction on medical marijuana registry fraud; (3) the attempt to influence a public servant statute is unconstitutional as applied to him; (4) the court erred in denying his motion to suppress a recording of his interview with police; and (5) the court erred in admitting expert testimony on medical examinations and establishing a physician-patient relationship. We address and reject each of these contentions and thus affirm.

## I. Relevant Facts and Procedural History

¶ 2 Defendant worked as a contract physician at a medical marijuana clinic in Loveland. Posing as a patient named "Nick Moser," an undercover police detective was examined by defendant and obtained from him a "Physician Certification" stating that Moser suffered from a debilitating medical condition and might benefit from the medical use of marijuana. The Physician Certification is part of the application that an applicant must submit to the Colorado Department of Public Health and Environment (Department) to qualify for a medical marijuana identification card. Colo. Const. art. XVIII, § 14(3); § 25–1.5–106(3), C.R.S.2014. Moser did not submit the Physician Certification he obtained from defendant to the Department.

¶ 3 At trial, the prosecution introduced evidence that defendant's consultation with Moser did not meet the legal requirements for a Physician Certification recommending medical marijuana. In a recording of the consultation that was admitted as evidence and played for the jury, Moser stated that he did not have a medical condition but "just kinda want[ed] to get legit" with his marijuana use. Moser stated that he could "put down an ankle" he had injured in high school, although it currently did not cause him any problems. When defendant examined Moser's ankle, Moser reiterated that he had no pain, tenderness, or restriction of movement.

¶ 4 Defendant then offered to check Moser's back, stating "[m]aybe that's off." After stating that Moser's back looked tight on the right side, although Moser said he had no pain or any issues with his back, defendant stated that he would "put down" low back. At some point during the consultation, defendant stated that "the way [he] look[ed] at it," Moser had "a constitutional right to use marijuana" and defendant was "just a go-to."

¶ 5 Based on this and similar evidence, the prosecution asserted that the statements in the Physician Certification that defendant (1) had "a bona fide physician-patient relationship with [Moser]"; (2) had "fully assessed [Moser's] medical history and [his] medical condition"; and (3) had diagnosed him with a "debilitating condition" consisting of "severe pain" in his lower back that "may be alleviated by the medical use of marijuana" were false. The prosecution alleged that these false statements constituted an attempt to influence, by means of deceit, a public official at the Department, with the intent thereby to affect the decision to issue Moser a medical marijuana identification card, in violation of section 18–8–306, C.R.S.2014.

¶ 6 A jury convicted defendant and the trial court sentenced him to thirty days in jail and three years of probation.

## II. The Medical Marijuana Registry Fraud Statute Does Not Bar Prosecution Under the Attempt to Influence a Public Servant Statute

¶ 7 Defendant argues that, because the legislature proscribed and directed punishment for his conduct in the specific medical marijuana registry fraud statute, the

legislature precluded prosecution for that conduct under more general criminal laws, such as the attempt to influence a public servant statute. He thus contends that the trial court erred in denying his pretrial motion to dismiss.

¶ 8 Section 18–18–406.3(2)(a), C.R.S.2014, provides that "[a]ny person who fraudulently represents a medical condition to a physician, the [D]epartment, or a state or local law enforcement official for the purpose of falsely obtaining a marijuana registry identification card from the [D]epartment ... commits a class 1 misdemeanor." The trial court denied defendant's motion to dismiss because it determined that this statute was not applicable to defendant's alleged conduct. It concluded that "the legislature has made no specific provision governing a physician's false recommendation of medical marijuana that might supplant the general prohibition against influencing a public servant by means of deceit."

¶ 9 We review de novo the trial court's denial of defendant's motion to dismiss because it involves an issue of statutory interpretation. *People v. Van De Weghe,* 2012 COA 204, ¶¶ 7, 9, 312 P.3d 231. "When interpreting a statute, we endeavor to give effect to the legislative intent.... To discern the legislative intent, we look to the statute's language and give its words and phrases their plain and ordinary meaning." *Id.* at ¶ 8. "If the language is unambiguous and intent appears with reasonable certainty, there is no need to resort to other rules of statutory construction." *People v. Davis,* 218 P.3d 718, 723 (Colo.App.2008).

¶ 10 We disagree with the trial court that the medical marijuana registry fraud statute could not apply to a physician's recommending medical marijuana. Section 18–18–406.3(2)(a) provides that the offense of medical marijuana registry fraud may be committed by "*[a]ny person* who fraudulently *represents* a medical condition to ... the [D]epartment ... for the purpose of falsely obtaining a marijuana registry identification card." (Emphasis added.) Although it is the patient who submits the Physician Certification to the Department, the Physician Certification contains representations by the physician. Thus, a submitted Physician Certification includes representations made by the physician to the Department for the purpose of obtaining a marijuana registry identification card for the patient. The plain language of section 18–18–406.3(2)(a) criminalizes such conduct by physicians if done fraudulently and for the purpose of someone else falsely obtaining an identification card.

¶ 11 However, we may affirm the trial court's denial of the motion to dismiss on any ground supported by the record. *People v. Aarness,* 150 P.3d 1271, 1277 (Colo.2006). We conclude that the court did not err in denying defendant's motion to dismiss because the legislature's enactment of the medical marijuana registry fraud statute does not preclude prosecution for defendant's conduct under the attempt to influence a public servant statute.

¶ 12 "[A] single transaction may give rise to the violation of more than one [criminal] statute." *People v. James,* 178 Colo. 401, 404, 497 P.2d 1256, 1257 (1972). Subject to limitations not applicable here, "[w]hen any conduct of a defendant establishes the commission of more than one offense, the defendant may be prosecuted for each such offense." § 18–1–408(1), C.R.S. 2014. If the same conduct is proscribed by "different enactments or in different sections of [the criminal] code, the [defendant] may be prosecuted under any one or all of the sections or enactments." § 18–1–408(7). In that situation, the prosecutor has discretion to determine the statute(s) under which to prosecute the defendant. *James,* 178 Colo. at 404, 497 P.2d at 1258.

¶ 13 It follows, as explained by the Colorado Supreme Court, that "enactment by the General Assembly of a specific criminal statute does not preclude prosecution under a general criminal statute unless a legislative intent is shown to limit prosecution to the special statute." *People v. Bagby,* 734 P.2d 1059, 1061 (Colo.1987).

¶ 14 Conversely, the General Assembly, by enacting a specific criminal statute, can preclude prosecution under a more general criminal statute if "clear legislative

intent" is shown to limit prosecution to the specific statute. *People v. Smith,* 938 P.2d 111, 115 (Colo.1997); *see also People v. Clanton,* 2015 COA 8, ¶ 11, —— P.3d ——. The determination of whether there is a clear legislative intent to limit prosecution in this manner turns on whether: (1) "the statute invokes the full extent of the state's police powers"; (2) "the specific statute is part of an act creating a comprehensive and thorough regulatory scheme to control all aspects of a substantive area"; and (3) "the act carefully defines different types of offenses in detail." *Smith,* 938 P.2d at 116 (citing *Bagby,* 734 P.2d at 1062; *People v. Warner,* 930 P.2d 564, 568 (Colo.1996)); *see also People v. Tow,* 992 P.2d 665, 667 (Colo.App.1999).

¶ 15 In *Bagby,* the supreme court held that the General Assembly intended to limit prosecution for Liquor Code violations to the specific punishment provisions set forth in the Liquor Code itself. 734 P.2d at 1062. Addressing the first factor of the three-factor test, the supreme court focused on the fact that "the General Assembly has declared that the Liquor Code is adopted as 'an exercise of the police powers of the state for the protection of the economic and social welfare and the health, peace and morals of the people of the state.'" *Id.* (quoting § 12–47–102(1), C.R.S.2014). The supreme court explained that "[t]his broad language suggests that in adopting specific penal provisions in the Liquor Code, the General Assembly exercised the full police power of the state and considered the full range of possible sanctions in selecting those most appropriate for violations of the Liquor Code." *Id.*

¶ 16 Unlike the broad language of the Liquor Code, the medical marijuana registry fraud statute declares that "[s]ection 14 of article XVIII of the state constitution creates *limited exceptions to the criminal laws of this state* for patients, primary care givers, and physicians concerning the medical use of marijuana by a patient to alleviate an appropriately diagnosed debilitating medical condition" and "requires the general assembly to determine and enact criminal penalties for specific acts described in the constitutional provision." § 18–18–406.3(1)(b), (g) (emphasis added).

¶ 17 Rather than emphasizing the protection and welfare of the general public, this declaration reflects the narrow purpose of benefitting medical marijuana patients with debilitating medical conditions by creating exceptions to some of the laws regulating unlawful drugs. Because a multitude of other statutes regulate medical marijuana, it cannot reasonably be presumed that in enacting section 18–18–406.3, the General Assembly exercised "the full police power of the state" or provided criminal sanctions for all possible medical marijuana related offenses.

¶ 18 Addressing the second factor of the three-factor test, *Bagby* explained that "[t]he very structure of the Liquor Code, with its detailed descriptions of the licensing process and specific directions to licensing authorities concerning the exercise of regulatory power, further indicates a thorough legislative consideration of all aspects of the licensing process, including the fashioning of appropriate sanctions." 734 P.2d at 1062. The Liquor Code provides that any violation of that Code constitutes, at a minimum, a misdemeanor offense. *Id.* at 1060 n. 2 (citing § 12–47–130, C.R.S.1985); *see also* Ch. 82, sec. 1, § 12–47–130, 1976 Colo. Sess. Laws 505.

¶ 19 When the voters enacted the constitutional amendment legalizing medical marijuana, the amendment required the General Assembly to "define such terms and enact such legislation as may be necessary for implementation" of the amendment, "as well as determine and enact criminal penalties" for specific listed offenses, none of which expressly addressed conduct by physicians. Colo. Const. art. XVIII, § 14(8).

¶ 20 In 2001, in compliance with the amendment, the General Assembly enacted section 18–18–406.3, codified as part of the Controlled Substances Act, to provide criminal penalties for the specific acts described in the constitutional amendment. § 18–18406.3(g); *see also* Ch. 149, sec. 1, § 18–18–406.3, 2001 Colo. Sess. Laws 471–74. Although we have construed the broad language of section 18–18–406.3(2)(a) to include certain conduct by physicians, the statute does not specifically address physician conduct.

¶ 21 Later, in 2010, the General Assembly enacted comprehensive legislation for the regulation of medical marijuana, which included a section, codified as section 25–1.5–106, establishing rules for physicians practicing under the medical marijuana program. Ch. 355, sec. 2, § 25–1.5–106, 2010 Colo. Sess. Laws 1677–78; Ch. 366, sec. 1, § 25–1.5–106, 2010 Colo. Sess. Laws 1691–92, 1693–95. The 2010 legislation also included the "Colorado Medical Marijuana Code," codified in Article 43.3 of Title 12. § 12–43.3–101, C.R.S.2014. The Medical Marijuana Code includes a provision providing that "[a] person who commits any acts that are unlawful pursuant to this article ... commits a class 2 misdemeanor ..., except for violations that would also constitute a violation of title 18, C.R.S. [the Criminal Code], which violation shall be charged and prosecuted pursuant to title 18." § 12–43.3–901(7). However, this provision is not dispositive of the issue here because the acts criminalized by section 18–18–406.3 are not acts specifically made unlawful by the Medical Marijuana Code.

¶ 22 Additionally, the Medical Marijuana Code does not specifically criminalize any conduct by a physician other than, for "a physician who makes patient referrals to a licensed medical marijuana center," the physician's receiving "anything of value from the medical marijuana center licensee, its agents, servants, officers, or owners or anyone financially interested in the licensee." § 12–43.3901(6). A separate statute—section 25–1.5–106—provides specific and detailed rules a physician recommending medical marijuana must follow.[1] Section 25–1.5–106 provides that if the Department has reasonable cause to believe that a physician is violating the statutory procedures, it may refer the matter to the state board of medical examiners for an investigation and determination. § 25–1.5–106(6)(a). If the board of medical examiners finds that the physician has violated the statute, the board may revoke or suspend a physician's privilege to recommend medical marijuana, in addition to imposing other sanctions. §§ 25–1.5–106(6)(c), 12–36–117(1)(mm), C.R.S.2014.

¶ 23 Section 25–1.5–106 does not define any criminal offenses or impose any criminal penalties specifically directed at noncompliant physicians. Rather, the sanctions contemplated by section 25–1.5106 are civil, not criminal, and include professional discipline and civil penalties. *See* § 12–36–118(5)(g)(III), C.R.S.2014.

¶ 24 Thus, although the medical marijuana legislation enacted in 2010 created a comprehensive statutory scheme that includes the civil regulation of physicians who recommend medical marijuana, the 2010 scheme does not

---

1. Section 25–1.5–106(5), C.R.S.2014, provides:

A physician who certifies a debilitating medical condition for an applicant to the medical marijuana program shall comply with all of the following requirements:

(a) The physician shall have a valid and active license to practice medicine, which license is in good standing.

(b) After a physician, who has a bona fide physician-patient relationship with the patient applying for the medical marijuana program, determines, for the purposes of making a recommendation, that the patient has a debilitating medical condition and that the patient may benefit from the use of medical marijuana, the physician shall certify to the state health agency that the patient has a debilitating medical condition and that the patient may benefit from the use of medical marijuana. If the physician certifies that the patient would benefit from the use of medical marijuana based on a chronic or debilitating disease or medical condition, the physician shall specify the chronic or debilitating disease or medical condition and, if known, the cause or source of the chronic or debilitating disease or medical condition.

(c) The physician shall maintain a record-keeping system for all patients for whom the physician has recommended the medical use of marijuana....

(d) A physician shall not:

(I) Accept, solicit, or offer any form of pecuniary remuneration from or to a primary caregiver, distributor, or any other provider of medical marijuana;

(II) Offer a discount or any other thing of value to a patient who uses or agrees to use a particular primary caregiver, distributor, or other provider of medical marijuana to procure medical marijuana;

(III) Examine a patient for purposes of diagnosing a debilitating medical condition at a location where medical marijuana is sold or distributed; or

(IV) Hold an economic interest in an enterprise that provides or distributes medical marijuana if the physician certifies the debilitating medical condition of a patient for participation in the medical marijuana program.

provide criminal sanctions for defendant's conduct. And, although we have determined that section 18–18–406.3 applies to certain conduct by a physician, that statute, enacted in 2001, does not expressly criminalize all improper conduct by physicians in connection with medical marijuana. Accordingly, it is not clear that section 18–18–406.3 is part of "a comprehensive and thorough regulatory scheme to control *all aspects*" of medical marijuana. *See Smith,* 938 P.2d at 115 (emphasis added)..

¶ 25 Addressing the third factor of the three-factor test, *Bagby* emphasized that the fact that the Liquor Code "carefully define[s] different types of offenses" with "detailed attention to various types of punishment" for these offenses "further evidence[s] an intent to fully delineate in the Liquor Code itself the types of punishment available for violations of its provisions." 734 P.2d at 1062.

¶ 26 Section 18–18–406.3 defines only five different offenses, each related to the medical marijuana registry and designated a class 1 misdemeanor. § 18–18–406.3(2), (3), (4), (5), (7). As noted, section 25–1.5–106 defines no criminal offenses, and while the Medical Marijuana Code does define several criminal offenses, it does not specifically proscribe defendant's conduct. *See* § 12–43.3–901. Moreover, to the extent that offenses defined in the Medical Marijuana Code "would also constitute a violation of title 18, C.R.S. [the Criminal Code]," they "shall be charged and prosecuted pursuant to title 18." § 12–43.3–901(7).

¶ 27 Although the Colorado Constitution (and enabling statutes) now provides certain exceptions to the criminal laws for the personal use of marijuana, Colo. Const. art. XVIII, § 16, recreational users or suppliers must act in conformance with the constitutional requirements to avoid criminal liability under the Controlled Substances Act. § 18–18–433, C.R.S.2014. The Controlled Substances Act continues to regulate all other marijuana-related conduct by defining the relevant offenses and prescribing penalties. § 18–18–406, C.R.S.2014. Defendant does not argue and there is no suggestion that section 18–18–406.3 displaces any of those offenses.

¶ 28 Thus, the medical marijuana registry fraud statute does not carefully define different types of offenses, thereby evincing a legislative intent to fully delineate the types of punishment available for medical marijuana offenses. And, even if were we to consider other medical marijuana statutes (despite the fact that this factor appears to entail analysis of only the specific statute at issue), those statutes do not fully delineate the criminal punishments available for medical marijuana related offenses.

¶ 29 Accordingly, there is no "clear legislative intent" to limit offenses related to medical marijuana to the medical marijuana registry fraud statute, and section 18–18–406.3 does not preclude prosecution of defendant under the attempt to influence a public servant statute. The trial court thus correctly denied defendant's motion to dismiss.

### III. Defendant Was Not Entitled to a Lesser Nonincluded Offense Instruction

¶ 30 Defendant argues that the trial court erred in denying his request for a lesser nonincluded offense jury instruction on medical marijuana registry fraud under section 18–18–406.3(2)(a). (Medical marijuana registry fraud is a class 1 misdemeanor, id. whereas attempt to influence a public servant is a class 4 felony, § 18–8306.) We reject defendant's argument.

¶ 31 The court rejected defendant's tendered lesser nonincluded offense instruction, concluding, in part, that because physicians do not themselves submit medical marijuana identification card applications to the Department, defendant could not have violated the statute. The court also determined that the lesser nonincluded offense instruction would be inconsistent with defendant's theory of defense, which was that he made no misrepresentations to anyone.

¶ 32 We review de novo the trial court's refusal to give the lesser nonincluded offense instruction because the court's determination that the medical marijuana registry fraud statute is inapplicable to defendant's conduct is a question of law. *See People v. Wartena,*

2012 COA 12, ¶¶ 30, 34, 296 P.3d 136; *People v. Rubio*, 222 P.3d 355, 360 (Colo.App.2009).

¶ 33 For the reasons discussed above, we disagree with the trial court that the medical marijuana registry fraud statute does not criminalize any conduct by physicians. However, we conclude, on different grounds, that defendant was not entitled to an instruction on the lesser nonincluded offense of medical marijuana registry fraud. *See Aarness*, 150 P.3d at 1277 (we may affirm a trial court's ruling on any basis supported by the record).

¶ 34 "A lesser non[ ]included offense is an offense less serious than the charged offense, arising from the same facts but [with] at least one element different from those in the original charge." *People v. Garcia*, 17 P.3d 820, 826 (Colo.App.2000). A defendant is entitled to a lesser nonincluded offense instruction, as part of his theory of defense, if there is a rational basis in the evidence to support a verdict acquitting him of the greater offense and simultaneously convicting him of the lesser offense. *People v. Trujillo*, 83 P.3d 642, 645 (Colo.2004).

¶ 35 The People argue that defendant was not entitled to a lesser nonincluded offense instruction on medical marijuana registry fraud because the Physician Certification was never submitted to the Department and section 18–18–406.3(2)(a) prohibits completed crimes, not attempts. However, we need not decide this issue because, even if we were to conclude that the statute encompasses an attempted offense, there was no evidentiary basis on which the jury rationally could have convicted defendant of medical marijuana registry fraud but acquitted him of attempt to influence a public servant.

¶ 36 "Any person who attempts to influence any public servant by means of deceit ..., with the intent thereby to alter or affect the public servant's decision, vote, opinion, or action concerning any matter which is to be considered or performed by him or the agency or body of which he is a member" commits the offense of attempt to influence a public servant. § 18–8–306. Because the evidence proving this offense also would have proved medical marijuana registry fraud, a jury rationally could not have convicted defendant of medical marijuana registry fraud but acquitted him of attempt to influence a public servant.[2]

¶ 37 The same evidence that would have established the actus reus of medical marijuana registry fraud also would have established the actus reus of attempt to influence a public servant. Under both statutes, as applied here, the actus reus would consist of defendant's making false representations about Moser's medical condition on the Physician Certification.

¶ 38 And, the same evidence that would have established the mens rea of medical marijuana registry fraud also would have established the mens rea of attempt to influence a public servant. The offense of attempt to influence a public servant proscribes using "deceit" "with the intent thereby to" affect a public servant's decision. § 188–306. "[D]eceit" includes "any ... false representation ... used to defraud another." *People v. Schupper*, 140 P.3d 293, 298 (Colo.App.2006) (internal quotation marks omitted). Accordingly, the mens rea of attempt to influence a public servant, as applied here, would be defendant's fraudulently making false representations with the intent to affect a Department official's decision to issue Moser a medical marijuana registry identification card. The mens rea

---

**2.** A conclusion that the elements of the attempt to influence a public servant statute and the medical marijuana registry fraud statute are identical could implicate the equal protection clause of the Colorado Constitution. *See People v. Stewart*, 55 P.3d 107, 114–15 (Colo.2002) ("[I]f a criminal statute [prescribes] different penalties for identical conduct, a person convicted under the harsher penalty is denied equal protection.... To determine whether two statutes proscribe identical conduct, we analyze the elements of each."). We conclude here only that if the jury were to determine that the evidence present-

ed proved medical marijuana registry fraud, it also would have to find that the evidence proved attempt to influence a public official. Determining whether two statutes proscribe identical conduct for equal protection purposes "requires a *facial* examination of the elements comprising each crime." *Id.* at 115 (emphasis added). Because defendant did not make an equal protection argument, we do not address, nor express any opinion, whether a facial comparison of the two statutes' elements leads to the conclusion that they proscribe identical conduct.

of medical marijuana registry fraud, as applied here, would be defendant's "fraudulently" representing Moser's medical condition "for the purpose of" Moser obtaining a medical marijuana registry identification card.

¶ 39 Thus, a determination that the evidence presented proved medical marijuana registry fraud would require a determination that the evidence also proved attempt to influence a public servant. Consequently, the jury could not rationally have convicted defendant of the lesser offense and acquitted him of the greater.

¶ 40 Accordingly, defendant was not entitled to a lesser nonincluded offense instruction under the applicable legal standard, and the trial court did not err in rejecting defendant's tendered instruction. It is therefore not necessary for us to address the trial court's second rationale for rejecting the lesser nonincluded offense instruction (that it was inconsistent with defendant's theory of defense).

### IV. The Attempt to Influence a Public Servant Statute Is Not Unconstitutional as Applied to Defendant

¶ 41 Defendant argues that the attempt to influence a public servant statute is unconstitutional because it is vague as applied to him and it violates his free speech rights under the First Amendment. We disagree.

¶ 42 We review de novo a constitutional challenge to a statute. *People v. Cisneros*, 2014 COA 49, ¶ 23, —— P.3d ——. Statutes are presumed to be constitutional, and the party challenging a statute's constitutionality has a heavy burden to establish that the statute is unconstitutional. *See id.*

### A. The Attempt to Influence a Public Servant Statute Is Not Vague as Applied to Defendant

¶ 43 Defendant filed a pretrial motion to dismiss, alleging that the attempt to influence a public servant statute was unconstitutional as applied to him. Although defendant did not explicitly argue that the statute was unconstitutionally vague as applied, the trial court construed the motion as "pos-sibly alleg[ing] that the statute is vague as applied to [d]efendant." The court concluded, however, that the statute was not vague as applied because it was sufficiently clear that it prohibited defendant's alleged conduct.

¶ 44 A statute is unconstitutionally vague if it "fail[s] to provide the kind of notice that will enable .... the ordinary citizen to conform his or her conduct to the law." *City of Chicago v. Morales*, 527 U.S. 41, 56, 58, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999). "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). A statute is unconstitutionally vague as applied if it does not, with sufficient clarity, prohibit the conduct against which it is enforced. *People v. Devorss*, 277 P.3d 829, 835 (Colo.App.2011).

¶ 45 Defendant argues that section 18–8–306 does not provide sufficient notice to one in his position that it could be applied to the circumstances here. The supreme court rejected a facial challenge to this same statute, concluding that it "clearly delineates the type of conduct—deceit, economic reprisal, or threats of violence—that subjects a person to criminal prosecution." *People v. Janousek*, 871 P.2d 1189, 1196 (Colo.1994). The terms "deceit" and "economic reprisal" are "terms of common usage" that do not "require a person to guess at their meaning." *Id.*

¶ 46 We reach a similar conclusion to the extent that defendant argues that the statute is unconstitutional as applied to him. The statute's terms are sufficiently clear such that a person of ordinary intelligence in defendant's position would not have to guess that it proscribes defendant's conduct. And, statutes which require an intent to do a prohibited act are less likely to be invalidated for vagueness because the specific intent element "relieve[s] the statute of the objection that it punishes without warning an offense of which the accused was unaware." *Screws*

*v. United States,* 325 U.S. 91, 102, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); *see also Smith v. Goguen,* 415 U.S. 566, 585, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974) (White, J., concurring in the judgment) ("If [the defendant]· intended the very act which the statute forbids, [he] can hardly complain that he did not realize his acts were in violation of the statute."); *People v. Czemerynski,* 786 P.2d 1100, 1112 (Colo.1990). Defendant thus was on fair notice that the making of false representations with the expectation that the Physician Certification would be submitted to the Department would constitute the offense of attempt to influence a public servant.

¶ 47 Even though the Physician Certification was never submitted to the Department, the statute requires only an "attempt" to influence, not that the public servant is actually influenced. The statute provides sufficient notice that a physician's representations in a Physician Certification may constitute, as the jury determined they did here, such an attempt.

¶ 48 Defendant argues that, nevertheless, the statute interferes with a physician's professional responsibilities and permits prosecutors to decide whether a physician's examination is sufficient under the medical marijuana program to avoid criminal liability. Therefore, according to defendant, prosecutors may arbitrarily apply the statute to whichever physicians attract their disfavor. We reject this contention because, as applied, the statute does nothing more than require a physician to refrain from making fraudulent representations in a Physician Certification. It therefore "set[s] forth adequate standards for enforcement so as to prevent arbitrary application." *See Cisneros,* ¶ 46.

¶ 49 Accordingly, the statute is not unconstitutionally vague as applied to defendant.

B. The Application of the Intent to Influence a Public Servant Statute to Defendant Does Not Violate His First Amendment Rights

¶ 50 Defendant argues that section 18-8-306 is unconstitutional as applied to him because it punishes him for physician-patient communications and communications of his personal views on the legalization of marijuana, both of which are protected speech under the First Amendment.[3] The trial court concluded that prosecuting defendant under the attempt to influence a public servant statute did not violate his free speech rights because the "prosecution was directed at the deceitful nature of defendant's communication and the person(s) to whom [he] directed the communication, not the speech's subject matter or [d]efendant's viewpoint."

¶ 51 To succeed on an as-applied constitutional challenge, a defendant must show that a "statute is unconstitutional as to the specific circumstances under which [the] defendant acted." *People v. Boles,* 280 P.3d 55, 61 (Colo.App.2011).

¶ 52 The government may not penalize an individual for exercising his or her First Amendment rights. *McCutcheon v. FEC,* 572 U.S. ——, ——, 134 S.Ct. 1434, 1449, 188 L.Ed.2d 468 (2014). However, "[w]hile the First Amendment protects the right to free speech, its protection is not absolute. Some categories of speech are unprotected by the First Amendment, and the government may permissibly regulate speech that falls within these categories." *People v.*

---

**3.** Defendant styles his argument as an "overbreadth as applied" challenge. *See, e.g., People v. Baer,* 973 P.2d 1225, 1231 (Colo.1999) ("A statute is overbroad if it sweeps so comprehensively as to include within its proscriptions a substantial amount of constitutionally protected speech."). However, "[a]ll overbreadth challenges are facial challenges" because "[a] party alleging overbreadth claims that although a statute did not violate his or her First Amendment rights, it would violate the First Amendment rights of hypothetical third parties if applied to them," and thus "an overbreadth challenge by its nature assumes that the measure is constitutional as applied to the party before the court." *Farrell v. Burke,* 449 F.3d 470, 498 (2d Cir.2006) (Sotomayor, J.). Defendant argued facial overbreadth to the trial court but he does not repeat that argument here; rather, it is clear from defendant's argument on appeal that he means to argue that the attempt to influence a public servant statute is unconstitutional as applied to him. We thus analyze defendant's First Amendment argument as an unconstitutional as-applied challenge, not an overbreadth challenge.

*Stanley,* 170 P.3d 782, 786 (Colo.App.2007) (citation omitted).

¶ 53 The record contains substantial evidence that defendant made false statements in the Physician Certification, including that he had diagnosed Moser with a debilitating medical condition consisting of severe pain in his back. False representations of this type are not protected by the First Amendment. *See Bill Johnson's Rests., Inc. v. NLRB,* 461 U.S. 731, 743, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983). Defendant thus has not shown that he was penalized for protected physician-patient communications or communications of his personal beliefs regarding the legalization of marijuana.

¶ 54 Accordingly, the application of section 18–8–306 to defendant did not violate his First Amendment free speech rights.

## V. The Trial Court Correctly Refused to Suppress Defendant's Statements to Police

¶ 55 After defendant's consultation with Moser, two other detectives went to the clinic for the purpose of interviewing defendant. They identified themselves as police officers to the receptionist and asked for defendant. Defendant came to the reception area to greet them and invited them into the office he was using at the clinic. During the interview, defendant sat behind a desk and the detectives sat opposite him. Defendant was not restrained in any way and the possibility of arrest was not discussed. There is no suggestion in the record that the detectives used a show of force to obtain defendant's cooperation, or that they continued the interview after any indication defendant wanted to end it. At one point during the interview, defendant left the room to retrieve some paperwork from another location in the clinic.

¶ 56 During the interview, which was recorded, defendant made several incrimina-

ting statements, such as, "I let [Moser] slip through" and "I probably should have denied him." The detectives did not mention the possibility of criminal charges until the very end of the interview. The detectives left without arresting defendant.

¶ 57 Defendant moved to suppress his recorded statements on the bases that the statements were not voluntarily made and were the product of a custodial interrogation which was not preceded by an advisement of his *Miranda* rights. The trial court denied the motion to suppress because, although defendant was subject to an interrogation, it determined that he was not in custody at the time and therefore *Miranda* warnings were not required. The court further determined that most of the recorded statements were made voluntarily, but it permitted defendant to request that certain portions of the recording involving arguably coerced statements be redacted. Defendant ultimately did not request any redaction, and the entire thirty-three minute recording was introduced as evidence at trial and played for the jury.

¶ 58 On appeal, defendant argues that the trial court erred in denying the motion to suppress because the trial court incorrectly concluded that he was not in custody at the time the statements were made.[4] We disagree.

¶ 59 "A trial court's ruling on a motion to suppress presents a mixed question of fact and law." *Cisneros,* ¶ 56. We defer to the trial court's findings of historical fact if they are supported by competent evidence in the record. *People v. Adkins,* 113 P.3d 788, 791 (Colo.2005). However, we review de novo the trial court's legal conclusion whether a defendant was subject to custodial interrogation. *Cisneros,* ¶ 72.

¶ 60 "To protect a [defendant's] Fifth Amendment right against self-incrimi-

4. Defendant does not argue in his opening brief on appeal that his statements were involuntary. In his reply brief, he argues that some of his inculpatory statements were coerced, which could be interpreted as constituting an argument that the statements were involuntary. To the extent that he does raise an involuntariness argument in his reply brief, we decline to consider it because we do not address arguments raised for the first time in a reply brief. *See, e.g., People v. Boles,* 280 P.3d 55, 61 n.4 (Colo.App.2011) (declining to address an argument raised for the first time in a reply brief). We therefore do not address whether the trial court erred in concluding that defendant's statements were voluntary.

nation, *Miranda* prohibits the prosecution from introducing in its case-in-chief any statement . . . procured by custodial interrogation, unless the police precede their interrogation with [*Miranda*] warnings." *Id.* at ¶ 71 (citing *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). The protections of *Miranda* thus apply only if a defendant was subject to both custody and interrogation. *Mumford v. People*, 2012 CO 2, ¶ 12, 270 P.3d 953. Because the trial court determined here that defendant was subject to interrogation, the only issue on appeal is whether defendant was in custody.

¶ 61 "The fundamental inquiry in determining whether [a defendant was] in custody for purposes of *Miranda* is whether a reasonable person in the [defendant's] position would believe himself to be deprived of his freedom of action to the degree associated with a formal arrest." *Id.* at ¶ 13 (internal quotation marks omitted). "This is an objective inquiry made on a case-by-case basis in light of the totality of the circumstances." *People v. Null*, 233 P.3d 670, 676 (Colo.2010). In making this determination, a court considers "whether, under the circumstances surrounding the interrogation, a reasonable person would have felt free to terminate the interrogation and leave." *Cisneros*, ¶ 72.

¶ 62 There is no exclusive list of factors to apply in determining whether a defendant was in custody. *Null*, 233 P.3d at 676. However, factors courts consider include: "(1) the time, place, and purpose of the encounter; (2) the persons present during the interrogation; (3) the words spoken by the officer to the defendant; (4) the officer's tone of voice and general demeanor; (5) the length and mood of the interrogation; (6) whether any limitation of movement or other form of restraint was placed on the defendant during the interrogation; (7) the officer's response to any questions asked by the defendant; (8) whether directions were given to the defendant during the interrogation; and (9) the defendant's verbal or nonverbal response to such directions." *Id.*

¶ 63 We conclude that the undisputed facts recited above amply support the trial court's conclusion that, under the totality of the circumstances, a reasonable person in defendant's position would not have felt deprived of his freedom of action to a degree associated with a formal arrest.

¶ 64 Because defendant was not in custody when he made the recorded statements, *Miranda* warnings were not required and the trial court correctly denied the motion to suppress this evidence.

## VI. The Trial Court Did Not Abuse its Discretion in Permitting the Prosecution's Medical Expert to Testify

¶ 65 At trial, the prosecution introduced, over defense counsel's objection, a physician's expert testimony on general medical assessments, examinations of patients, and establishing a bona fide physician-patient relationship. The expert was a licensed physician and a professor of medicine. She opined that, based on the information she had been provided regarding defendant's consultation with Moser, defendant did not: (1) complete a full assessment of Moser's medical history and current medical condition; (2) perform an appropriate physical examination; (3) establish a bona fide physician-patient relationship; or (4) properly diagnose a debilitating medical condition consisting of severe pain in the lower back.[5]

¶ 66 Defendant argues that the trial court erred in admitting this testimony, first, because the expert lacked knowledge in the field of medical marijuana and had never conducted an examination for a medical marijuana applicant, and, second, because the expert's testimony was irrelevant to the charged offense and highly prejudicial. We reject these arguments.

¶ 67 We review a trial court's admission of expert testimony for an abuse of discretion. *People v. Friend*, 2014 COA 123M, ¶ 26, —— P.3d ——. We will not overturn the court's determination unless it is manifestly arbitrary, unreasonable, or unfair. *People v. Conyac*, 2014 COA 8M, ¶ 22,

---

5. Defendant also presented expert testimony at    trial by a physician on these issues.

—— P.3d ——. "In reviewing the court's ruling regarding expert testimony, we afford the evidence the maximum probative value and minimum unfair prejudice." *Id.* at ¶ 23.

¶ 68 CRE 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Thus, for expert testimony to be admissible under CRE 702, "the substance of the proffered testimony [must] be helpful to the fact finder" and "the witness serving as the conduit for such information [must be] competent to render an expert opinion on the subject in question." *Brooks v. People*, 975 P.2d 1105, 1109 (Colo. 1999). If these two requirements are met, the testimony nevertheless may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." CRE 403.

¶ 69 The trial court acted within its discretion in determining that the expert was competent to render an opinion on medical marijuana examinations. Although defendant argues that the expert was not qualified to testify on the procedures used by physicians practicing under the medical marijuana program, he provides no authority to show that the medical assessment and diagnosis required for a medical marijuana recommendation differ from that performed by physicians for other purposes. Defendant does not make any other specific arguments that the expert was not qualified to testify about medical marijuana examinations.

¶ 70 Defendant then argues that, because the trial court made a pretrial determination that defendant did not establish a physician-patient relationship with Moser un-

der section 25–1.5–106(2)(a.5), there was no need for expert testimony on the issue.[6] The trial court made this determination after a hearing on defendant's motion to dismiss based on the constitutional and statutory exception to the criminal laws for physicians who recommend medical marijuana. See Colo. Const. art. XVIII, § 14(2)(c)(II) ("It shall be an exception from the state's criminal laws for any physician to: . . . Provide a patient with written documentation, based upon the physician's contemporaneous assessment of the patient's medical history and current medical condition and a bona fide physician-patient relationship, stating that the patient has a debilitating medical condition and might benefit from the medical use of marijuana."); § 18–18–406.3(1)(b).

¶ 71 However, the court's determination that defendant did not meet any of the requirements for the exception to apply, including establishing a bona fide physician-patient relationship, did not (and could not) govern the issue the jury had to decide: whether defendant's representations in the Physician Certification were false.

¶ 72 "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *People v. Williams*, 790 P.2d 796, 798 (Colo.1990) (internal quotation marks omitted). Defendant's representations in the Physician Certification included that he had "a bona fide physician-patient relationship with [Moser]," had "fully assessed [Moser's] medical history and [his] medical condition," and had diagnosed him with a "debilitating condition" consisting of "severe pain" in his

6. Section 25–1.5–106(2)(a.5) provides that "[b]ona fide physician-patient relationship," for purposes of the medical marijuana program, means:
(I) A physician and a patient have a treatment or counseling relationship, in the course of which the physician has completed a full assessment of the patient's medical history and current medical condition, including an appropriate personal physical examination;

(II) The physician has consulted with the patient with respect to the patient's debilitating medical condition before the patient applies for a registry identification card; and
(III) The physician is available to or offers to provide follow-up care and treatment to the patient, including patient examinations, to determine the efficacy of the use of medical marijuana as a treatment of the patient's debilitating medical condition.

lower back. Because most lay persons would be unfamiliar with the technical meaning of these terms in the context of medical examinations, the expert's testimony could have assisted the jury in determining whether, based on the evidence, defendant's representations were false.

¶ 73 Therefore, assigning the expert's testimony the maximum probative value and the minimum possible unfair prejudice, *see Conyac*, ¶ 23, we conclude that the trial court did not abuse its discretion in determining that the testimony met the requirements of CRE 702 and was not excludable under CRE 403.

## VII. Conclusion

¶ 74 The judgment of conviction is affirmed.

Navarro and Ney *, JJ., concur