The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
September 6, 2018

## 2018COA128

**No. 15CA0868 People v. Jompp — Crimes — Escapes; Criminal
Law — Sentencing — Punishment for Habitual Offenders**

A division of the Colorado Court of Appeals concludes that

section 18-1.3-801(5), C.R.S. 2013, precludes noncustodial escape

convictions from being used as a current conviction for adjudicating

a defendant an habitual criminal.

COLORADO COURT OF APPEALS     **2018COA128**

Court of Appeals No. 15CA0868
Mesa County District Court No. 13CR1336
Honorable Richard T. Gurley, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Christopher Allen Jompp,

Defendant-Appellant.

JUDGMENT AFFIRMED, SENTENCE AFFIRMED IN PART
AND VACATED IN PART, AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE HAWTHORNE
Berger and Miller*, JJ., concur

Announced September 6, 2018

Cynthia H. Coffman, Attorney General, Megan C. Rasband, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Sean J. Lacefield, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1    Defendant, Christopher Allen Jompp, appeals the judgment of conviction entered on jury verdicts finding him guilty of third degree assault, robbery, and escape.  He also appeals his sentence.  We affirm the judgment, but we vacate his sentence on the escape conviction and remand the case for resentencing on that conviction. We affirm the remainder of the sentence.

## I.    Factual Background and Procedural History

¶ 2    Jompp, the victim, and an acquaintance, B.B., were driving around one evening in a stolen car while high on methamphetamine.  During the night they stopped at two apartments to use more methamphetamine.  Another acquaintance, C.P., who was also high, left with the group from the second apartment.  The four continued to drive around town, with the victim driving, Jompp in the passenger seat, and B.B. and C.P. sitting in the back.  Tension arose between the victim and Jompp. The victim had propositioned B.B. and C.P. numerous times for sex in return for money and drugs, and Jompp asked him to stop.

¶ 3    Eventually the victim parked the car near one of the apartments they had visited earlier.  What happened next isn't clear, but by all accounts a fight broke out between Jompp and the

victim. When the fight ended, the victim fell out of the driver's side door unconscious.

¶ 4 C.P. recalled that B.B. then got out of the car and hit and kicked the victim while he was on the ground. B.B. said, however, that she remained in the car and saw C.P. go over to the victim. C.P. admitted that at some point after the victim was unconscious on the ground, at Jompp's direction, she went through the victim's pockets, took money from him, and gave it to Jompp. B.B. also took the victim's cell phone from the backseat.

¶ 5 Jompp, B.B., and C.P. left the victim on the ground and dropped the car off in an alley. Around four o'clock that morning a security guard noticed the victim still on the ground and called the police. An ambulance took him to the emergency room where he was diagnosed with multiple serious head injuries.

¶ 6 The police traced the victim's cell phone to B.B., who identified Jompp as the victim's assailant. Days after the victim was injured, the police found Jompp and C.P. The police ordered Jompp to the ground, handcuffed him, and searched him. One officer led Jompp to a police car to take him to jail. As the officer was about to place

2

Jompp in the police car's back seat, Jompp took off running. After a short chase, the police caught Jompp and he was taken to jail.

¶ 7 The victim died approximately one month later from the injuries he sustained in the fight.

¶ 8 The People charged Jompp with second degree murder, second degree assault, robbery, escape, and several habitual criminal counts. At trial, Jompp's defense theories were that B.B. killed the victim and that the prosecution otherwise failed to prove the charges. The jury convicted Jompp of third degree assault, robbery, and escape. The trial court adjudicated Jompp an habitual criminal[1] and sentenced him to forty-eight years in prison.

## II. Speedy Trial

¶ 9 Jompp contends the court violated his speedy trial rights by continuing his jury trial, over his objection, beyond six months after he pleaded not guilty and thirteen months after he was arrested. We disagree.

---

[1] While we prefer "[a] habitual criminal," we use the statute's language. *See The Chicago Manual of Style* § 5.72 (17th ed. 2017).

## A. Preservation

¶ 10    The People agree that Jompp preserved his statutory speedy trial claim, but argue that he didn't preserve his constitutional speedy trial claim.

¶ 11    At the hearing to continue the trial, defense counsel objected "to the continuance of Mr. Jompp's speedy trial rights under the Federal and State Constitutions, as well as, his statutory right." But for the rest of the hearing, the parties and the court only discussed and considered the statutory speedy trial elements required to continue the trial.

¶ 12    On the morning of trial, defense counsel again objected:

> Judge, at this time, I wanted to reiterate a previous objection we made for the record. It is the Defense's position that [the] Prosecution's previous request to continue the trial that was in the context of their unavailability of some witnesses. It is the Defense's position that there was not good cause for that at that time. And as such, it is our position that this trial is outside of speedy trial. So we are objecting to being outside of speedy trial. We'd ask the Court to note that objection.

¶ 13    So at both the hearing and trial, defense counsel "provided no analysis of the constitutional issues and never sought a ruling from

4

the trial court." *People v. Roberts*, 2013 COA 50, ¶ 48. Nor did he "ask the court to determine whether, under the applicable four-part balancing test of *Barker v. Wingo*, 407 U.S. 514 (1972), and *People v. Small*, 631 P.2d 148 (Colo. 1981), the delay in this case violated the state and federal constitutions." *People v. Scialabba*, 55 P.3d 207, 209-10 (Colo. App. 2002); *see People v. McMurtry*, 122 P.3d 237, 243 (Colo. 2005) ("[H]e did not argue any of the elements of this constitutional right in either his motion or at the hearing on the motion."). So Jompp didn't preserve his constitutional speedy trial claims.

¶ 14 But, unpreserved constitutional errors may be reviewed for the first time on appeal. *Reyna-Abarca v. People*, 2017 CO 15, ¶ 37. And we "do not presume acquiescence in the loss of fundamental constitutional rights, and therefore indulge every reasonable presumption against waiver." *People v. Rediger*, 2018 CO 32, ¶ 39 (quoting *People v. Curtis*, 681 P.2d 504, 514 (Colo. 1984)). So we review Jompp's constitutional speedy trial claims for plain error. *See id.* at ¶ 47.

## B.    Standard of Review

¶ 15    We review a trial court's decision to apply the statutory speedy trial exclusion in section 18-1-405(6)(g)(I), C.R.S. 2017, for an abuse of discretion.  *Scialabba*, 55 P.3d at 209.  "We will not disturb the trial court's findings granting a continuance if the record supports these findings."  *People v. Trujillo*, 2014 COA 72, ¶ 18.

An error is plain if it is obvious and substantial and so undermines the trial's fundamental fairness as to cast serious doubt on the judgment of conviction's reliability.  *Rediger*, ¶ 48.

## C.    Additional Facts

¶ 16    Jompp was arrested on October 31, 2013.  On March 14, 2014, he entered a not guilty plea and jury trial was set for August 25, 2014.

¶ 17    Over the following months, the prosecution sought to secure B.B.'s attendance at trial.  The prosecution knew B.B. lived in Utah and in April 2014 asked the trial court to issue a certificate to summon her from outside the state under section 16-9-203, C.R.S.

2017, which the court granted.[2]  After trying unsuccessfully to serve B.B. the summons, the prosecution learned that she may have been living at a different address in Utah, and in June the court issued a second certificate to summon.  In August the prosecution requested a third certificate to summon, and the court issued it with a recommendation that B.B. be taken into custody to assure her presence at trial.

¶ 18    On August 18, 2014, the prosecution filed a motion to continue the trial if B.B. was still unavailable.  At the motion hearing, the prosecutor provided additional information on his efforts to locate and serve B.B.  Specifically, the prosecutor explained that he had three people from the police department working with local Utah agencies.  And, investigators had contacted B.B. via Facebook and believed they could trace her cell phone, which they guessed would probably take two to three weeks.  The investigators had also been following her on another Facebook account she used under a different name.  The prosecutor also said

---

[2] Section 16-9-203, C.R.S. 2017, adopted the uniform act to secure the attendance of witnesses from without a state in criminal proceedings, which had also been adopted by Utah.

7

that B.B.'s biological son and the son's adoptive parents were cooperating and were still in touch with B.B. The investigators were also tracking B.B.'s husband who had just been released from jail and was thought to be with B.B.

¶ 19 The prosecutor also said there was a $25,000 outstanding warrant in Utah, they were "close to getting her," and that "leads . . . on her address in the past two weeks looked very promising," but that she was "something of a couch surfer." It concluded that "there's reasonable grounds to believe that we will have her in the not too distant future." The court granted the motion and set Jompp's trial date for December 1, 2014.

¶ 20 Not long after, B.B. was arrested in Utah based on the certificate to summon and appeared in court in Colorado on September 11, 2014. She testified at trial.

### D. Statutory Speedy Trial

¶ 21 Section 18-1-405(1) provides a defendant a statutory right to be brought to trial within six months from the date he or she enters a not guilty plea. If a trial is not brought within this time frame, generally the charges against the defendant must be dismissed.

§ 18-1-405(1); *see also People v. Roberts*, 146 P.3d 589, 592 (Colo. 2006).

¶ 22    But section 18-1-405(6)(g)(I) allows an additional delay of up to six months at the prosecution's request, without the defendant's consent, if the prosecution demonstrates that (1) evidence material to the state's case is unavailable; (2) the prosecution has exercised due diligence to obtain the evidence; and (3) there exist reasonable grounds to believe the evidence will be available at a later date. The prosecution must make a sufficient record that these three elements have been met. *People v. Trujillo*, 2014 COA 72, ¶ 17. The trial court may rely on the prosecution's uncontested offers of proof. *Id.*

¶ 23    Jompp contends that the court erred in continuing the trial because the People's evidence of "'[p]romising leads' to merely contact a witness" wasn't sufficient under the statute to show "reasonable grounds to believe the evidence will be available at the later date."[3] *See* § 18-1-405(6)(g)(I). We disagree.

---

[3] Jompp doesn't contest the other two statutory elements.

¶ 24    We reject Jompp's contention that this means the prosecution must show that it's "known or proved to be true" or "incapable of failing." To support this proposition, Jompp relies on a case from another division of this court that said "[t]he prosecution must prove with some certainty that the unavailable evidence will become available at a later date," but the Supreme Court has vacated that opinion. *People v. Valles*, 2013 COA 84, ¶ 41, *cert. granted, judgment vacated, and case remanded*, No. 13SC551, 2015 WL 4999239 (Colo. Aug. 24, 2015) (unpublished order). And the statute simply requires that "there are reasonable grounds to believe that this evidence will be available at the later date." § 18-1-405(6)(g)(I).

¶ 25    We also reject Jompp's argument that prior case law effectively requires the prosecution to provide evidence of a "cooperative witness, known facts about later availability, or circumstances within the State's control." In *Trujillo*, a division of this court found that reasonable grounds existed that a witness's testimony would be available at a later date based on the prosecution's statement that "it *believed* a plea agreement with [the witness] would soon be reached." ¶ 23 (emphasis added); *see also People v. Koolbeck*, 703

10

P.2d 673, 677 (Colo. App. 1985) ("The court was entitled to believe that if either the accomplice was acquitted or if he was convicted but did not appeal, then his testimony would be available for trial at the later date.").

¶ 26      And, Jompp didn't challenge the prosecution's evidence or otherwise show that its belief that it would secure the witness for trial wasn't reasonable. "Accordingly, the trial court acted within its discretion by relying on the prosecution's offer of proof and by finding that there was a reasonable possibility [the witness] would be available to testify." *Valles*, ¶ 42.

¶ 27      We conclude that sufficient record evidence supported the court's granting of the prosecution's request for a continuance. *See Marquez v. Dist. Court*, 200 Colo. 55, 57-58, 613 P.2d 1302, 1304 (1980) ("The burden [of compliance with the speedy trial statute] includes making a record sufficient for an appellate court to determine statutory compliance.").

### E.    Constitutional Speedy Trial

¶ 28      A defendant has a constitutional speedy trial right under the United States Constitution's Sixth Amendment and article II, section 16 of the Colorado Constitution. *Small*, 631 P.2d at 154.

11

"The analysis of whether the constitutional right was violated differs from the analysis of whether the statutory right was violated." *People v. Nelson*, 2014 COA 165, ¶ 21. Under both the Federal and State Constitutions, "the right to a speedy trial attaches with the filing of a formal charge or with a defendant's arrest." *People v. Glaser*, 250 P.3d 632, 635 (Colo. App. 2010) (citing *United States v. Marion*, 404 U.S. 307, 320 (1971), and *People v. Chavez*, 779 P.2d 375, 376 (Colo. 1989)). Under both provisions, compliance is determined by considering four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant resulting from the delay. *Barker*, 407 U.S. at 530; *Chavez*, 779 P.2d at 376. A defendant bears the burden of showing that his constitutional right to a speedy trial was violated. *Valles*, ¶ 45.

¶ 29 Under the four *Barker* factors, we conclude that the trial court didn't plainly err by granting the prosecution's requested continuance.

¶ 30 First, the length of the delay was thirteen months. A delay over a year is presumptively prejudicial. *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992). "This delay, however, was by

12

no means extreme." *Nelson*, ¶ 33 (discussing delay just short of fourteen months); *see also People v. Fears*, 962 P.2d 272, 279 (Colo. App. 1997) (the defendant's constitutional right wasn't violated by three-year delay between charge and trial). Still, Jompp was incarcerated during this time. So this factor weighs in his favor.

¶ 31 Second, while the delay is attributable to the prosecution, the delay was justified. *See Barker*, 407 U.S. at 531 ("Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay."). So this factor favors the prosecution.

¶ 32 Third, while Jompp asserted his right to a speedy trial, he "did not expand upon that argument" at any time. *Valles*, ¶ 49. This factor may slightly favor Jompp because he generally asserted his right.

¶ 33 Fourth, Jompp asserts he was prejudiced by "oppressive pretrial incarceration" because he was incarcerated from arrest until trial. The Supreme Court in *Barker* identified three interests of a defendant to consider in assessing prejudice: (1) preventing oppressive pretrial incarceration; (2) minimizing the accused's anxiety and concern; and (3) limiting the possibility the defense will be impaired. 407 U.S. at 532. "Of these, the most serious is the

13

last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* Jompp doesn't describe how his incarceration was oppressive or unjustified and doesn't establish any prejudice to his defense from his incarceration. *See Nelson,* ¶ 41 ("[H]e presented no evidence or offer of proof to establish any such anxiety or concern beyond that normally to be expected from the fact of a criminal prosecution. And he did not allege, much less establish, any prejudice to the defense resulting from the delay."); *People v. Fennell,* 32 P.3d 1092, 1095 (Colo. App. 2000) ("[S]ignificantly, defendant has not asserted any specific prejudice resulting from the delays. In this context, the fact that defendant was incarcerated is given slight weight absent a showing that his ability to present a defense was impaired."). So this factor favors the People.

¶ 34    Having reviewed the four factors, we conclude the trial court didn't plainly err because Jompp's constitutional right to a speedy trial wasn't obviously violated.

### III.    *Sufficient Evidence Supported the Robbery Conviction*

¶ 35    Jompp contends that the prosecution "presented insufficient evidence" that he committed robbery, as either a principal or

14

accomplice, because it (1) failed to show that he "applied physical violence against [the victim] during the course of an unlawful taking of property from his person or presence"; and (2) "presented nothing more than speculation . . . that [the theft] was even conceived, much less started, until after the assault." We disagree.

### A.     Standard of Review and Governing Law

¶ 36     We review the evidence's sufficiency de novo. *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005). We must determine whether the evidence, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a rational fact finder that the defendant is guilty beyond a reasonable doubt. *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010). We give the prosecution the benefit of every reasonable inference that can fairly be drawn from the evidence, so long as any inference is supported by a convincing logical connection between the facts established and the conclusion inferred. *People v. Perez*, 2016 CO 12, ¶ 25; *People v. Villalobos*, 159 P.3d 624, 627 (Colo. App. 2006) ("[W]here reasonable minds could differ, the evidence is sufficient to sustain a conviction.").

¶ 37    A person commits robbery if he "knowingly takes anything of value from the person or presence of another by the use of force, threats, or intimidation." § 18-4-301(1), C.R.S. 2017.  "The gravamen of robbery is the application of physical force or intimidation against the victim at any time during the course of a transaction culminating in the taking of property from the victim's person or presence."  People v. Bartowsheski, 661 P.2d 235, 244 (Colo. 1983).  "There is no requirement that the application of force or intimidation must be virtually contemporaneous with the taking."  *Id.* at 244-45.

¶ 38    In *Bartowsheski,* the supreme court held that the evidence was sufficient to support a conviction for robbery where the defendant entered a house to steal guns; killed a child who was awakened and had gotten into his path; and, at some point after the attack, took guns from the house.  *Id.* at 243-45.

### B.    Analysis

¶ 39    The record contains sufficient evidence to support the jury's conclusion beyond a reasonable doubt that Jompp robbed the victim.

16

¶ 40     B.B. said that while the group was parked in the car, Jompp suddenly attacked the victim.  After Jompp and the victim exchanged blows, the victim fell out of the car and onto the ground. B.B. said she then saw C.P. get out of the car, go over to the victim, and start digging through his pockets.  C.P. then got back in the car and the group left the scene.  And C.P. admitted that she went through the victim's pockets to get money at Jompp's direction and she gave him the money she found.  But she was unsure whether she took the money after the fight or later when she went back to check on the victim.

¶ 41     We acknowledge that other evidence may support the contrary conclusion that the assault resulted solely from the argument between Jompp and the victim and wasn't part of "the course of a transaction culminating in the taking of property from the victim." But as to such factual determinations, "[w]e do not sit as a thirteenth juror to determine the weight of the evidence presented to the jury."  *Clark*, 232 P.3d at 1293.

¶ 42     We also reject Jompp's argument that the prosecution had to show that the force he used against the victim was "calculated to take [the victim's] money."  Robbery isn't a specific intent crime, so

17

it doesn't require proof of intent to permanently deprive another person of the use or benefit of a thing of value. *People v. Moseley*, 193 Colo. 256, 262, 566 P.2d 331, 335 (1977). And under *Bartowsheski*'s "course of the transaction" doctrine, Jompp's use of force against the victim during the course of a transaction in which C.P., as his accomplice,[4] took the victim's money was sufficient to constitute a robbery. *See Bartowsheski*, 661 P.2d at 244; *People v. Buell*, 2017 COA 148, ¶ 26 (evidence necessarily sufficient to support aggravated and attempted aggravated robbery convictions where the defendant committed theft and used a knife to avoid apprehension) (*cert. granted* Apr. 23, 2018). Whether Jompp told C.P. to take the money before, after, or contemporaneous with the assault, his use of force against the victim made it possible for C.P. to take the money without resistance. *See People v. Davis*, 935 P.2d 79, 85 (Colo. App. 1996) ("Thus, the [*Bartowsheski*] court essentially set out a 'but for' test — but for the force, the victim would have kept the property, irrespective of how the force was used.").

---

[4] The court instructed the jury on accomplice liability.

18

## IV.   The Court Didn't Err by Refusing to Give the Resisting Arrest Instruction

¶ 43    Jompp contends that the court erred by failing to instruct the jury that it could convict him of the lesser nonincluded offense of resisting arrest.  We disagree.

### A.   Standard of Review

¶ 44    "Colorado cases have not conclusively established the standard of appellate review applicable to denials of lesser nonincluded offense instructions." *People v. Wartena*, 2012 COA 12, ¶ 29.  But whether "the record contains sufficient evidence to support instruction on a lesser offense is a factual inquiry reviewed for an abuse of discretion." *Id.* at ¶ 30; *People v. Nozolino*, 2014 COA 95, ¶ 43 ("Because the district court denied [the] instruction on a factual basis, we review for an abuse of discretion."); *cf. People v. Montante*, 2015 COA 40, ¶ 32 ("We review de novo the trial court's refusal to give the lesser nonincluded offense instruction because the court's determination that the medical marijuana registry fraud statute is inapplicable to defendant's conduct is a question of law.").  A court abuses its discretion when its decision is

"manifestly arbitrary, unreasonable, or unfair." *People v. Ibarra*, 849 P.2d 33, 38 (Colo. 1993).

¶ 45    A defendant is entitled to a lesser nonincluded offense instruction as part of his defense theory if the evidence provides a rational basis to support a "verdict acquitting [the defendant] of a greater offense . . . and convicting [the defendant] of the lesser offense." *People v. Trujillo*, 83 P.3d 642, 645 (Colo. 2004) (quoting *Bartowsheski*, 661 P.2d at 242).

### B.    Additional Facts

¶ 46    Two police officers spotted Jompp outside an apartment complex while interviewing a witness. One officer drew his handgun and ordered him to the ground. Jompp lay face down with his arms extended outward. Minutes later, other officers arrived and handcuffed Jompp behind his back. An officer searched him. One officer then led Jompp by the arm to the officer's patrol car to transport him to jail. While the officer was checking the patrol car's backseat before placing Jompp into it, he briefly let go of Jompp, who ran off while still handcuffed. He was caught shortly after and transported to jail.

¶ 47     At trial, defense counsel tendered a resisting arrest instruction as a lesser nonincluded offense of escape. Defense counsel argued that whether Jompp was under arrest or was in the process of being arrested when he ran away was a factual question for the jury to decide. The court rejected the instruction because it found that the arrest had already been effectuated and it didn't think the instruction would be appropriate based on the evidence.

### C.    *The Evidence Didn't Support Giving the Tendered Instruction*

¶ 48     Jompp asserts that "there was a rational basis to acquit [him] of escape while convicting [him] of resisting arrest because the distinguishing element between the two offenses was the disputed point . . . whether police established physical control sufficient to provide reasonable assurance that Jompp would not leave."

¶ 49     A person commits escape if "while being in custody or confinement and held for or charged with but not convicted of a felony, he knowingly escapes from said custody or confinement." § 18-8-208(3), C.R.S. 2017. "[E]ffecting an arrest, in the sense of establishing physical control over the arrestee, is required before a person is 'in custody' for the purposes of the escape statute." *People v. Thornton*, 929 P.2d 729, 733 (Colo. 1996). "In custody" is

21

defined as the "physical control of the person by physical restraint or by the person's submission to control, which is sufficient to provide reasonable assurance that he or she will not leave." *People v. Padilla,* 113 P.3d 1260, 1261 (Colo. App. 2005); *see Thornton,* 929 P.2d at 733.

¶ 50 A defendant commits resisting arrest "if he knowingly prevents or attempts to prevent a peace officer, acting under color of his official authority, from effecting an arrest of the actor, by . . . [u]sing any other means which creates a substantial risk of causing bodily injury to the peace officer or another." § 18-8-103(1)(b), C.R.S. 2017.

¶ 51 The undisputed record evidence shows that Jompp was in custody. He had already submitted to the police officer's instructions, was handcuffed, searched, and led by the arm to a patrol car for transport to jail. By the time he ran from the officer, he was already under the officer's sufficient "physical control . . . by physical restraint" *and* by his "submission to control" such that there was a "reasonable assurance that he . . . [would] not leave." *Padilla,* 113 P.3d at 1261; *see also People v. Stanley,* 56 P.3d 1241, 1245 (Colo. App. 2002) ("The People do not contest that leg shackles

22

bound defendant when he allegedly resisted arrest. Defendant argues that he was already in custody, and therefore the People could not establish that he attempted to prevent a police officer from effecting his arrest. We agree."). That the officer removed his hand from Jompp for an instant to prepare the patrol car's back seat doesn't create a disputed factual issue, and "the mere chance that a jury may reject uncontroverted testimony and convict on the lesser charge does not require the trial court to instruct the jury on the lesser charge." *People v. Carey*, 198 P.3d 1223, 1234 (Colo. App. 2008) (quoting *People v. Hall*, 59 P.3d 298, 300 (Colo. App. 2002)).

¶ 52    We conclude the court didn't abuse its discretion by declining to instruct the jury on the crime of resisting arrest.

*V.    Habitual Criminal Sentencing*

¶ 53    Jompp contends the court convicted him in violation of his Sixth Amendment right to a jury trial when, at sentencing, it, not the jury, found that he had prior convictions and increased his sentence under the habitual criminal sentencing statute. We reject this contention.

23

¶ 54    We review a sentence's constitutionality de novo. *Lopez v. People*, 113 P.3d 713, 720 (Colo. 2005). But because Jompp failed to preserve this issue at trial, reversal is required only if the court plainly erred. *People v. Miller,* 113 P.3d 743, 750 (Colo. 2005); *see Reyna-Abarca,* ¶ 47.

¶ 55    In a nutshell, Jompp's argument is a criticism of *Almendarez-Torres v. United States,* 523 U.S. 224 (1998), where the United States Supreme Court originally recognized a jury trial exception for determining prior convictions for sentencing enhancement purposes. This argument is based on a more recent Supreme Court opinion in *Alleyne v. United States,* 570 U.S. 99, 111 (2013), which some have construed as criticizing *Almendarez* and its progeny.

¶ 56    But the prior conviction exception remains well-settled law. *See Lopez,* 113 P.3d at 723; *People v. Parks,* 2015 COA 158, ¶ 29; *People v. Poindexter,* 2013 COA 93, ¶ 72. So the court didn't err.

*VI.    Noncustodial Escape as an Habitual Criminal Current Offense*

¶ 57    Jompp contends that his sentence is illegal because his noncustodial escape conviction can't be deemed a current offense under the habitual criminal statute. The People disagree and

24

respond that noncustodial escape convictions are precluded only from being used as prior convictions. We agree with Jompp.

### A. Standard of Review

¶ 58 A sentence that is beyond the court's statutory authority is illegal. *People v. Anaya,* 894 P.2d 28, 31 (Colo. App. 1994). A sentence's legality is a question of law that we review de novo. *People v. Bassford,* 2014 COA 15, ¶ 20. We review a court's statutory construction de novo. *People v. Hernandez,* 250 P.3d 568, 570-71 (Colo. 2011).

¶ 59 "Our primary purpose in statutory construction is to ascertain and give effect to the intent of the General Assembly." *Doubleday v. People,* 2016 CO 3, ¶ 19. We look first to the statute's language, giving words and phrases their plain and ordinary meanings. *Id.* We read statutory words and phrases in context and construe them according to the rules of grammar and common usage. *Id.*; *Marquez v. People,* 2013 CO 58, ¶ 8 ("It is widely accepted that where the legislature has not expressly defined a statutory term or otherwise limited its meaning, that term must be given its ordinary meaning."). If the statute is unambiguous, we needn't conduct any further statutory analysis. *Doubleday,* ¶ 20.

## B.    Additional Facts

¶ 60    The jury convicted Jompp of escape, a class 4 felony.  The conviction had a presumptive sentencing range of two to six years.  At sentencing, the trial court found that the prosecution had proved six habitual criminal counts and sentenced Jompp to twenty-four years for the escape conviction under section 18-1.3-801(2)(a), C.R.S. 2017.[5]

¶ 61    After Jompp appealed his conviction, he filed a motion for limited remand with this court to allow the trial court to rule on his pending Crim. P. 35(a) motion to correct an illegal sentence.  A division of this court granted the motion and, on limited remand, Jompp challenged the escape sentence as illegal because section 18-1.3-801(5) C.R.S. 2013,[6] precluded the court from imposing an habitual criminal sentence on his escape conviction.  The trial court denied Jompp's motion, and his appeal was recertified to this court.

---

[5] Jompp was also adjudicated an habitual criminal on his robbery conviction and sentenced to twenty-four years on that conviction.
[6] We cite to this statute's subsection that was in effect at the time of Jompp's sentencing as the language relevant to this appeal has been subsequently amended.

26

## C.    *Analysis*

¶ 62    The trial court sentenced Jompp as an habitual criminal on his escape conviction under section 18-1.3-801(2)(a)(I), C.R.S. 2017, which states in relevant part as follows:

> Except as otherwise provided . . . in subsection (5) of this section, every person convicted in this state of any felony, who has been three times previously convicted, upon charges separately brought and tried, and arising out of separate and distinct criminal episodes, either in this state or elsewhere, of a felony . . . shall be adjudged an habitual criminal and shall be punished: . . .  For the felony offense of which such person is convicted . . . for a term of four times the maximum of the presumptive range.

So, to be "adjudged an habitual criminal" requires: (1) a current conviction "of any felony" in Colorado and (2) three prior felony convictions on charges separately brought and tried and arising out of separate and distinct criminal episodes.  *Id.*; *see People v. Hampton*, 876 P.2d 1236, 1242 (Colo. 1994) ("An adjudication of habitual criminality — a component of sentencing — is an integral part of a conviction, not a separate conviction.").

¶ 63 Subsection (5) precludes certain escape convictions from being used in habitual criminal adjudications, and the statute in effect at the time of Jompp's adjudication stated in relevant part as follows:

> A conviction for escape . . . shall not be used for the purpose of adjudicating a person an habitual criminal as described in . . . subsection (2) of this section unless the conviction is based on the offender's escape or attempt to escape from a correctional facility . . . or from physical custody within a county jail.

§ 18-1.3-801(5), C.R.S. 2013.[7]  Because Jompp didn't escape from a correctional facility or from within a county jail, for our purposes here, subsection (5) can be boiled down as follows: "A conviction for escape . . . shall not be used for the purpose of adjudicating a person an habitual criminal as described in . . . subsection (2) of this section." *Id.*

¶ 64 We conclude that the statute's plain language precluding noncustodial escape convictions from being "used for the purpose of

---

[7] We also note that the General Assembly has since amended subsection (5) to read: "A *current or prior* conviction for escape . . . may not be used for the purpose of adjudicating a person an habitual criminal as described in . . . subsection (2) of this section." Ch. 374, sec. 1, § 18-1.3-801, 2017 Colo. Sess. Laws 1937 (emphasis added).  Neither party contends that this should make a difference in our analysis.  We don't think it should.

28

adjudicating a person an habitual criminal," *id.*, applies to both prior and current noncustodial convictions.

¶ 65 The word "purpose" is generally defined as "[a]n objective, goal, or end." *Black's Law Dictionary* 1431 (10th ed. 2014). "The purpose of the Habitual Criminal Act is to punish more severely those individuals who show a propensity toward repeated criminal conduct." *People v. Dist. Court*, 711 P.2d 666, 670 (Colo. 1985). To effectuate this purpose, that is to adjudicate a defendant as an habitual criminal, requires that a defendant be convicted of a qualifying current offense and of qualifying prior offenses. *See* § 18-1.3-801(2)(a)(I), C.R.S. 2017; § 18-1.3-801(2)(b) (exempting certain level 4 drug felonies as current offenses from habitual adjudication); § 18-1.3-801(3) (exempting certain "drug law conviction[s]" as prior offenses for habitual adjudication). So under the statute's plain language, by definition, a conviction is "used for the purpose" of adjudicating a person an habitual criminal whether it is used as the current conviction or as a prior conviction. After all, both types of convictions are necessarily used to achieve the statute's purpose — habitual criminal adjudication.

¶ 66    To construe subsection (5)'s language as exempting only prior noncustodial escape convictions from the habitual adjudication process would be contrary to its common meaning.  And "unless [the language has] acquired a technical meaning by legislative definition," we must read "words and phrases in context and construe them literally according to common usage."  *People v. Yascavage*, 101 P.3d 1090, 1093 (Colo. 2004); *see also Dep't of Transp. v. Stapleton*, 97 P.3d 938, 943 (Colo. 2004) ("[W]e presume that in using the phrase 'state highway *purposes*,' the General Assembly intended that CDOT have a condemnation authority which was broader than that needed simply for constructing 'state highways.'  To read the grant of authority as restricted to the list of structures included in the definition of 'highway' under section 43-1-203, as urged by the Respondent, would render the word 'purposes' in section 43-1-208(3) superfluous.") (emphasis added).

¶ 67    The statute's other subsections support our reading of subsection (5)'s broad language.  Where the General Assembly intends to exempt only certain convictions from being prior offenses for habitual adjudication purposes, it has specifically done so.  *See* § 18-1.3-801(3) ("No drug law conviction shall be counted as a *prior*

*felony conviction* under this section unless such prior offense would be a felony if committed in this state at the time of the commission of the new offense.") (emphasis added). And the General Assembly has exempted certain convictions as current offenses using specific language. § 18-1.3-801(2)(b) ("The provisions of paragraph (a) of this subsection (2) shall not apply to a conviction for a level 4 drug felony . . . even if the person has been previously convicted of three or more qualifying felony convictions.").

¶ 68    The People argue that if the General Assembly meant to exempt noncustodial escape convictions as current convictions, it could have used language similar to that in subsection (2)(b) exempting level 4 drug felonies. But even though it didn't, that doesn't alter the ordinary meaning of subsection (5)'s language. Sometimes the legislature uses different language to achieve similar results. *See, e.g., Marquez,* ¶ 15 ("[W]e find that the phrase 'arising out of the same incident' . . . was not intended to convey any meaning different from 'arising from the same criminal episode.'") (citations omitted).

¶ 69    To be clear, we hold that section 18-1.3-801(5), C.R.S. 2013 precluded a noncustodial escape conviction from being used as a

31

current conviction for the purpose of adjudicating a person an habitual criminal under subsection (2) of that section. We conclude that the trial court erred in adjudicating Jompp an habitual criminal on his noncustodial escape conviction.

*VII.  Conclusion*

¶ 70    We affirm the trial court's judgment of conviction. We vacate the part of the sentence based on Jompp's escape conviction and remand for resentencing on that conviction. We affirm the remainder of the sentence.

JUDGE BERGER and JUDGE MILLER concur.