23CA1896 Peo in Interest of AH-A 04-30-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1896
City and County of Denver Juvenile Court No. 22JD575
Honorable Laurie Clark, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of A.H-A.,

Juvenile-Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE WELLING
Tow and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 30, 2026

---

Philip J. Weiser, Attorney General, Grant R. Fevurly, Senior Assistant Attorney General, Denver, Colorado, for Petitioner-Appellee

Megan A. Ring, Colorado State Public Defender, Casey Mark Klekas, Deputy State Public Defender, Denver, Colorado, for Juvenile-Appellant

¶ 1     A.H-A., a juvenile, appeals his delinquency adjudication for unlawful sexual contact and harassment.  We affirm.

## I.     Background

¶ 2     A.H-A. and N.H. are cousins.  In the fall of 2022, they attended the same school.  A.H-A. had just turned fourteen years old, and N.H. was twelve years old.  On November 2, 2022, N.H. was found vaping at school.  Afterward, she asked to talk to Joseph Kidane, the school's dean of culture.  She told him that A.H-A. had touched her without her consent twice.  Thereafter, Cherie Nuanes, a "physician associate," evaluated N.H.  N.H. repeated the allegations to her.  Cori Harris, a forensic interviewer, interviewed N.H. about the incidents.  N.H. repeated the two allegations to Harris and added a third.

¶ 3     First, N.H. reported that A.H-A. pointed near her chest and asked, "Can I touch?"  She felt uncomfortable; replied, "No.  You're weird"; and walked away.  The prosecution didn't charge A.H-A. in relation to this first incident.

¶ 4     Second, following the first incident, N.H. said that, while at A.H-A.'s house, he told her that they needed to go grab something for his parents from his mother's bedroom.  When they were alone

in the bedroom, A.H-A. came up behind her and put his hands under her bra.  She tried to elbow him and left the room.  The prosecution charged A.H-A. with unlawful sexual contact in relation to this incident.

¶ 5    Third, after the second incident, when N.H. was at A.H-A.'s house again, she went to get a charger from A.H-A.'s bedroom.  Once there, he put his hands on her waist and pulled her towards his body.  She then ran out of A.H-A.'s bedroom.  The prosecution charged A.H-A. with harassment in relation to this third incident.

¶ 6    The case proceeded to a one-day bench trial.  A.H-A.'s defense at trial was that N.H. had falsely accused him and that he didn't commit the alleged offenses.  Specifically, he argued that N.H. made up the allegations to get out of trouble after she was caught vaping.  Five witnesses testified for the prosecution — Kidane, Harris, Nuanes, N.H., and the investigating detective.  A.H-A.'s sister and mother testified for the defense.  The juvenile court adjudicated A.H-A. delinquent on both counts.

## II.    Issues on Appeal

¶ 7    A.H-A. raises three issues on appeal.  First, he contends that the evidence presented at trial was insufficient to prove beyond a

reasonable doubt that he acted with the required mens rea for both offenses. Second, he contends that the juvenile court violated his statutory and constitutional rights to a speedy trial when it continued the trial over his objection. Third, he contends that the juvenile court reversibly erred by admitting child hearsay through three witnesses at trial. For the reasons set forth below, we reject all three contentions and therefore affirm.

## A. Sufficiency of the Evidence

¶ 8    A.H-A. first contends that the prosecution didn't present sufficient evidence to prove beyond a reasonable doubt that he had the required mens rea for the two offenses. As for the sexual contact offense, he contends that there wasn't sufficient evidence presented at trial to prove that he touched N.H. for the purpose of sexual arousal, gratification, or abuse. As for the harassment offense, he contends that there wasn't sufficient evidence at trial to prove that he intended to harass, annoy, or alarm N.H.

### 1. Additional Facts

¶ 9    The prosecution presented the following evidence at trial in support of the sexual contact charge:

3

- N.H. testified that she and A.H-A.

  > were at his house and since his dad sells corn and they have all their supplies in his mom's room, he told me that we had to go grab some chips, I think. And that's when we went, and he came up behind me and put his hands in my shirt, and I felt uncomfortable. So I tried to, like, elbow him, and then I left the room.

- N.H. testified that A.H-A. put his hands under her bra.

- N.H. testified that only she and A.H-A. were in his mother's room when the incident occurred.

- Kidane testified that N.H. told him that A.H-A. fondled her by touching her breast area under her shirt.

- Nuanes testified that N.H. told her that A.H-A.'s hands touched her breasts underneath her shirt.

¶ 10    The prosecution presented the following evidence regarding the harassment charge:

- N.H. testified that A.H-A. made her uncomfortable three times.

- First, N.H. testified that A.H-A. pointed at her shirt, near her chest, and asked, "Can I touch?" N.H. responded, "No, you're weird." N.H. then left the room.

- Second, as mentioned above, N.H. testified that A.H-A. put his hands under her bra. She said she tried to elbow him and then left the room.

- Third, N.H. testified that, after she went into A.H-A.'s bedroom to get a charger, he put his hands on her waist. Kidane also testified that N.H. told him that A.H-A. approached her from behind and pulled her waist closer to his waist.

- N.H. testified that she never told A.H-A. "it was okay for him to touch [her] the way that he did."

- Kidane testified that, based on his conversation with N.H., he concluded the touching was nonconsensual, unwarranted, and unwanted.

- Nuanes testified that N.H. told her that A.H-A. touched her breasts under her bra and grabbed her waist.

### 2. Standard of Review and Applicable Law

¶ 11 "We review the record de novo to determine whether the evidence presented was sufficient in both quantity and quality to sustain a defendant's conviction." *McCoy v. People*, 2019 CO 44, ¶ 63; *see also People in Interest of J.R.*, 216 P.3d 1220, 1221 (Colo.

App. 2009) ("When reviewing the sufficiency of the evidence supporting an adjudication of juvenile delinquency, the standards are the same as those used in a criminal case.").

¶ 12    We employ a "substantial evidence test," in which we ask if the evidence, "when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010) (quoting *People v. Bennett*, 515 P.2d 466, 469 (Colo. 1973)). "[I]t is the fact finder's function in a criminal case to consider and determine what weight should be given to all parts of the evidence and to resolve conflicts, testimonial inconsistencies, and disputes in the evidence." *People v. McIntier*, 134 P.3d 467, 471 (Colo. App. 2005). It doesn't matter if we would have reached a different conclusion as the trier of fact; we must "give the prosecution the benefit of every reasonable inference which might be fairly drawn from the evidence." *Gorostieta v. People*, 2022 CO 41, ¶ 17 (quoting *People v. Harrison*, 2020 CO 57, ¶ 32).

¶ 13     Section 18-3-404(1)(a), C.R.S. 2025, provides that a person can commit unlawful sexual contact by (1) knowingly subjecting a victim to any sexual contact (2) if the person knows that the victim doesn't consent.  As relevant here, sexual contact means "[t]he knowing touching of the victim's intimate parts by the actor . . . if that sexual contact *is for the purposes of sexual arousal, gratification, or abuse.*"  § 18-3-401(4)(a), C.R.S. 2025 (emphasis added).  "Intimate parts" includes the "buttocks . . . or the breast of any person."  § 18-3-401(2).

¶ 14     And "[a] person commits harassment if, *with intent to harass, annoy, or alarm* another person, the person . . . [s]trikes, shoves, kicks, or otherwise touches a person or subjects [them] to physical contact."  § 18-9-111(1)(a), C.R.S. 2025 (emphasis added).

### 3.     Unlawful Sexual Contact

¶ 15     A.H-A. contends that the evidence was insufficient to prove that he acted with the purpose of sexual arousal, gratification, or abuse when he touched N.H. on her breasts underneath her bra. We disagree.

¶ 16     To prove unlawful sexual contact, "there must be other evidence of the juvenile's sexual purpose beyond the sexual contact

7

itself." *People in Interest of J.O.*, 2022 COA 65M, ¶ 29.  Here, there was such evidence.  Specifically, the prosecution presented evidence that A.H-A. brought N.H. to his mother's room where they were alone.  A reasonable fact finder could infer that, by doing so, A.H-A. was trying to isolate her and was thereby "attempting to avoid detection." *Id.*  This fact, in combination with the evidence that A.H-A. placed his hands up N.H.'s shirt and under her bra is substantial and sufficient to support a conclusion that A.H-A. acted with the purpose of sexual arousal, gratification, or abuse.  *See id.* at ¶ 20 ("[W]hether a defendant acted with the requisite mental state to sustain a conviction for unlawful sexual contact can be inferred from the nature of and the circumstances surrounding the sexual touching.").

¶ 17    Notwithstanding this evidence, A.H-A. contends that this case is similar to *J.O.*, when a division of this court held that the evidence wasn't sufficient to prove that a juvenile had the requisite intent for his unlawful sexual contact adjudication.  But the facts in *J.O.* are readily distinguishable.  *J.O.* involved an eleven-year-old boy who "touched the clothing covering the intimate parts of an eleven-year-old girl in a classroom and in a crowded school

8

hallway in front of classmates and at least one teacher." *Id.* at ¶ 33. The division concluded that this evidence was insufficient to establish that the juvenile acted for the purpose of sexual arousal, gratification, or abuse. *Id.*

¶ 18    The circumstances surrounding A.H-A.'s conduct were materially different from those in *J.O.* The prosecution presented other evidence beyond the contact itself that wasn't present in *J.O.* — namely, that A.H-A. touched N.H. when they were isolated in A.H-A.'s mother's room and that he touched her breast under her clothing. This evidence was sufficient to prove the requisite mental state beyond a reasonable doubt.

¶ 19    Finally, A.H-A. contends that the juvenile court didn't sufficiently explain its findings on the intent element and improperly shifted the burden of proof to the defense. But "[o]n review of a challenge to the sufficiency of the evidence, . . . we are not bound by what the juvenile court articulated as the basis for its finding." *Id.* at ¶ 19. Instead, "we must consider all the evidence to determine whether any rational trier of fact might accept it as sufficient to support a finding of guilt beyond a reasonable doubt."

9

*Id.* As explained above, there was sufficient evidence to support A.H-A.'s adjudication for unlawful sexual contact.

### 4. Harassment

¶ 20 A.H-A. next contends that the evidence was insufficient to prove that he intended to harass, annoy, or alarm N.H. during the third incident. Again, we disagree.

¶ 21 The evidence showed that A.H-A. had previously pointed at N.H.'s chest area and asked, "Can I touch?" and that she said no and walked away. On a separate occasion, A.H-A. touched N.H. underneath her bra; N.H. elbowed him and left the room. So, when A.H-A. later grabbed N.H.'s waist and pulled her towards his own waist, a reasonable fact finder could infer that A.H-A. intended to harass, annoy, or alarm N.H. given her prior rejections of his physical contact. Indeed, N.H. had made it clear on two prior occasions that A.H-A. wasn't welcome to touch her in these ways. Therefore, given N.H.'s repeated rebuffing of A.H-A., a reasonable fact finder could infer the requisite mental state of intending to harass, annoy, or alarm when A.H-A. again touched her by grabbing her waist.

## B.     Speedy Trial

¶ 22     A.H-A. next contends that the juvenile court violated his statutory and constitutional right to a speedy trial when it erroneously found good cause to continue the trial at the People's request and over his objection.  We conclude that he waived his statutory speedy trial claim and reject his constitutional speedy trial claim on the merits.

### 1.     Additional Facts

¶ 23     The People formally filed charges against A.H-A. via summons on November 18, 2022.  On April 13, 2023, A.H-A. entered a not guilty plea, and the juvenile court set the case for a bench trial on June 26, 2023.  Because his statutory speedy trial right deadline would have expired on June 13, 2023, he waived this right to accommodate the June 26 trial date.  The court accepted this waiver and recalculated A.H-A.'s new speedy trial deadline to be June 27, 2023.

¶ 24     On June 15, 2023, the People filed a motion to continue the trial, explaining that Nuanes, the physician associate — an essential witness — would be out of town on June 26.  They also requested a continuance because they hadn't been able to contact

N.H. or her family, leaving them unable to effectively prepare for trial. A.H-A. objected to the continuance, arguing that there wasn't good cause under the applicable statutes to continue the trial past the speedy trial deadline of June 27, 2023. He also argued that a continuance would violate his constitutional speedy trial right under *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

¶ 25    On June 26, the juvenile court heard argument on the People's motion to continue. The People reiterated their request for a continuance under the good cause exception because Nuanes was out of town. The juvenile court found good cause to continue the trial over A.H-A.'s objection and rescheduled it for August 7, 2023. The case went to trial on that date.

### 2.    Statutory Speedy Trial Right

¶ 26    A juvenile's right to a speedy trial is governed by section 18-1-405, C.R.S. 2025, and Crim. P. 48(b). § 19-2.5-904(1), C.R.S. 2025. Although section 18-1-405(1) guarantees a defendant the right to a speedy trial, to obtain relief based on a violation of this statute, a defendant must move for dismissal of the case before trial commences. § 18-1-405(5); *see People v. McMurtry*, 122 P.3d 237, 242 (Colo. 2005). "Failure to so move is a waiver of the defendant's

12

rights under [the speedy trial statute]." § 18-1-405(5). A.H-A. didn't move to dismiss his case on speedy trial grounds before his trial began. He filed only an objection to the continuance of the trial. But he didn't — either in the objection, at the hearing where the juvenile court granted the People's request for a continuance, or at any other time before trial — move to dismiss the case based on a violation of his statutory speedy trial right. Therefore, A.H-A. waived his statutory speedy trial claim, and we decline to address it on the merits.[1] *See Moody v. Corsentino*, 843 P.2d 1355, 1362 (Colo. 1993).

### 3. Constitutional Speedy Trial Right

¶ 27    Second, A.H-A. contends that the juvenile court violated his constitutional right to a speedy trial. The People respond that A.H-A. failed to preserve this claim, so we should review it for plain error. We assume, without deciding, that by objecting to the

---

[1] To the extent that A.H-A. suggests for the first time in a footnote in his reply brief that we should review the juvenile court's decision to grant the prosecution's request for a continuance over his objection as the error (as opposed to the violation of the speedy trial statute), we decline to address this newly reframed argument. *See People v. Czemerynski*, 786 P.2d 1100, 1107 (Colo. 1990), *abrogated on other grounds by, Rojas v. People*, 2022 CO 8.

continuance on constitutional speedy trial grounds, A.H-A. preserved this contention. So we address it on the merits.

¶ 28     A defendant in a criminal case has a right to a speedy trial under the United States and Colorado Constitutions, U.S. Const. amend. VI; Colo. Const. art. II, § 16, and a juvenile charged with committing a delinquent act is entitled to the same constitutional speedy trial protections as an adult charged with committing a criminal offense, *P.V. v. Dist. Ct.*, 609 P.2d 110, 111 (Colo. 1980). Whether a juvenile's constitutional right to a speedy trial was denied is determined by an ad hoc balancing of four factors: (1) the length of the trial delay; (2) the reason for the delay; (3) whether the defendant asserted their right to a speedy trial; and (4) any prejudice to the defendant from the delay. *See Barker*, 407 U.S. at 530. "Although these factors must be considered in combination, the length of the delay must be at least presumptively prejudicial before further inquiry into the other factors is warranted." *People v. Glaser*, 250 P.3d 632, 635 (Colo. App. 2010).

¶ 29     We review de novo the juvenile court's analysis of the constitutional right to a speedy trial. *People v. West*, 2019 COA

14

131, ¶ 7. But we review the juvenile court's findings of fact for clear error. *Id.*

¶ 30    Based on our review of the relevant factors, we conclude that A.H-A.'s constitutional right to a speedy trial wasn't abridged. As a threshold matter, we consider whether the delay was presumptively prejudicial. A.H-A. was brought to trial within nine months of being charged.[2] *See Glaser,* 250 P.3d at 635 (explaining that the constitutional speedy trial right attaches at the time of arrest or filing of a formal charge). The length of delay becomes presumptively prejudicial as it approaches one year. *West,* ¶ 14. So the delay in bringing A.H-A. to trial wasn't presumptively prejudicial. *See id.* (concluding that a delay of eight months and six days wasn't presumptively prejudicial). But even if we assume, again without deciding, that the nearly nine-month delay A.H-A. experienced was presumptively prejudicial, the other *Barker* factors support our conclusion that A.H-A. wasn't denied his constitutional right to a speedy trial.

---

[2] A.H-A. was charged on November 18, 2022, and he went to trial on August 7, 2023, a delay of eight months and twenty days.

15

¶ 31    With respect to the second *Barker* factor, although the reason for the delay was attributable to the prosecution, it was justified due to the unavailability of a critical witness. *See People v. Jompp*, 2018 COA 128, ¶ 31; *see also Barker*, 407 U.S. at 531 ("[A] valid reason, such as a missing witness, should serve to justify appropriate delay.").

¶ 32    The third *Barker* factor weighs in A.H-A.'s favor because he objected to the prosecution's request to continue the trial. Indeed, in his written objection, he cited *Barker* to argue that his constitutional speedy trial right would be violated if the juvenile court continued his trial.

¶ 33    The fourth *Barker* factor decidedly weighs against finding a constitutional speedy trial violation, as we can discern no prejudice. A.H-A. asserts that he was prejudiced due to the delay because it impaired his defense, and, given his age, he suffered "continued anxiety." But his trial was continued only from June 26 to August 7, a delay of just six weeks. A.H-A. has failed to show how such a short delay materially impaired his defense. He contends that further delay increased the risk of witnesses "forgetting" the incidents, but he points to nothing in the record that supports this

contention.  Indeed, N.H.'s allegations remained consistent throughout the case and trial.  And while we recognize that A.H-A. may have been anxious about the pending trial, we conclude that this alone wasn't sufficient prejudice attributable to the six-week delay.  Having reviewed these factors, we conclude that, on balance, they weigh against finding a constitutional speedy trial violation.  Accordingly, we conclude that the court didn't violate A.H-A.'s constitutional right to a speedy trial by granting the continuance.

## C.    Child Hearsay

¶ 34    Last, A.H-A. contends that the juvenile court reversibly erred by admitting child hearsay from three witnesses.  We discern no error.

### 1.    Additional Facts

¶ 35    Although the juvenile court set the pretrial motions deadline for April 28, 2023, on May 12, the People filed a notice of intent to introduce child hearsay statements under section 13-25-129, C.R.S. 2025, together with a request for leave to file that motion late.  In their motion, the People said they intended to introduce at trial statements that N.H. made to three witnesses: Harris, Kidane, and Nuanes.  The People explained that the delay in filing the notice

17

was the result of a miscommunication due to a switch in prosecutors. A.H-A. then filed his objection to the introduction of child hearsay. After the juvenile court continued the trial, the court scheduled a motions hearing for July 24, 2023, to address the People's child hearsay request.

¶ 36 At the hearing, after Kidane, Harris, and Nuanes testified, the juvenile court's ruling explained why it believed their statements had sufficient indicia of reliability to be admissible under *People v. District Court,* 776 P.2d 1083, 1089-90 (Colo. 1989). It later did the same in a written order. Both in its oral ruling and order, the juvenile court found that (1) the statements sought to be introduced were spontaneous and weren't the product of leading questions; (2) N.H. and the witnesses had no motive to lie; and (3) N.H.'s statements were consistent over time.

¶ 37 With respect to the assertion that N.H. lied because she got caught vaping, the court found in its written order that "there [wa]s no evidence to support that [N.H.] lied for the sole purpose of explaining [her] concerning behavior." Instead, the court found that N.H.'s "concerning behavior" was the result of recent trauma. The court also found that there was "no evidence to support that the

18

behavior or general character of [N.H.] would diminish the reliability of [her] statements." Based on these findings, the juvenile court granted the People's request to introduce the child hearsay evidence.

### 2. Applicable Law and Standard of Review

¶ 38    Hearsay is a statement other than one made by the declarant while testifying at a trial or hearing, offered into evidence to prove the truth of the matter asserted. CRE 801(c). Hearsay isn't admissible unless it's subject to an exception set forth in a rule or statute. CRE 802.

¶ 39    One such exception is the child hearsay statute, section 13-25-129(1), which "allows certain out-of-court statements made by child declarants, which would otherwise be hearsay, to be admitted at trial." *People v. Phillips*, 2012 COA 176, ¶ 87. As relevant here, the child hearsay statute allows out-of-court statements made by a person under fifteen years of age at the time the statement was made to be admissible in a delinquency proceeding when the declarant is alleged to have been a victim of unlawful sexual behavior, including unlawful sexual contact. § 13-25-129(2); *see also* § 16-22-102(9)(c)(I), C.R.S. 2025 (defining

unlawful sexual behavior to include unlawful sexual contact); *People v. Gookins*, 111 P.3d 525, 528 (Colo. App. 2004) ("If the legislature had intended to condition the admission of child hearsay upon the age of the child victim at the time of trial, it could have so stated."). "The proponent of the statement shall give the adverse party reasonable notice of the proponent's intention to offer the statement and the particulars of the statement." § 13-25-129(7). Such statements, however, are only admissible if the juvenile court, after conducting a hearing, finds "that the time, content, and circumstances of the statement[s] provide sufficient safeguards of reliability." § 13-25-129(5)(a).

¶ 40 A court may consider several nonexclusive factors to determine whether the time, content, and circumstances of a statement provide sufficient safeguards of reliability. *Dist. Ct.*, 776 P.2d at 1089-90. Those factors include the following:

(1) whether the statement was made spontaneously;

(2) whether the statement was made while the child was still upset or in pain from the alleged abuse;

(3) whether the child used age-appropriate language;

(4) whether more than one person heard the statement;

(5)   the general character of the child; and

(6)   other factors such as bias against the defendant, the use of leading questions, or intervening events that may raise reliability concerns.  *Id.*

¶ 41   We review the juvenile court's decision to admit child hearsay under section 13-25-129 for an abuse of discretion.  *Phillips*, ¶ 91.

### 3.   Analysis

¶ 42   Beyond contending that the trial court erred by admitting unreliable child hearsay under the *District Court* factors, A.H-A. separately raises three other contentions regarding the child hearsay evidence.  We address these first before addressing his reliability contention.

¶ 43   First, A.H-A. contends that the juvenile court prejudged the evidence because it presided over the pretrial hearing on the child hearsay issue and then acted as the fact finder at trial.  In support of his contention that this was improper, A.H-A. cites section 13-25-129(5)(a), which requires pretrial child hearsay hearings to be conducted "outside the presence of the jury."  But A.H-A. cites no cases to support his contention that a court can't perform both roles (i.e., gatekeeper and ultimate fact finder).  Nor are we aware of

any. Furthermore, at the child hearsay hearing, the juvenile court said that it wasn't making a credibility determination that day and was "only trying to determine whether it[ was] appropriate that these statements bec[a]me part of the record." *See People v. Hall,* 2021 CO 71M, ¶ 36 ("In a bench trial . . . 'there is a presumption that all incompetent evidence is disregarded by the court in reaching its conclusions.'" (quoting *Liggett v. People,* 135 P.3d 725, 733 (Colo. 2006))). Accordingly, we reject this contention.

¶ 44    Second, A.H-A. contends that the prosecution violated the "reasonable notice" section of the statute by filing its notice of its intent to introduce child hearsay after the motions deadline had passed. The court, however, has wide discretion to extend pretrial deadlines for good cause, and we discern no abuse of that discretion here. More importantly, A.H-A. doesn't explain why the delay of less than three weeks past the motions deadline didn't constitute "reasonable notice," given that it was still more than six weeks before the then-scheduled trial and nearly three months before the case ultimately went to trial. Accordingly, we hold that the juvenile court didn't abuse its discretion by declining to exclude

22

the evidence based on the prosecution's failure to give reasonable notice as required by section 13-25-129(7).

¶ 45    Third, A.H-A. contends that, in admitting the child hearsay, the juvenile court acted contrary to the purpose of the child hearsay statute because N.H. was an older child — thirteen at the time of trial — and she testified at trial.  A.H-A. argues that the statute was meant to protect children of a tender age who are too young to testify from facing their abusers in court.  A.H-A. construes the statute too narrowly.

¶ 46    If the relevant statute does not define "child" — as is the case here — the child hearsay statute expressly applies to statements made by children who are under fifteen.  § 13-25-129(2).  N.H. was twelve when she initially made the statements and thirteen when she testified at trial.  Moreover, the statute explicitly applies to both situations when the child testifies and situations when they don't.  § 13-25-129(5)(b)(I).  Indeed, the statute imposes additional safeguards when the child doesn't testify at trial.  § 13-25-129(5)(b)(II).  The plain language of the statute, therefore, refutes this contention.

¶ 47    Last, A.H-A. contends that the statements didn't meet the requirements for reliability under *District Court.* Citing the factors from *District Court,* he argues that N.H.'s statements weren't spontaneous because she made them only after she was caught vaping at school, and therefore her motivation in making them was to get out of trouble. He also argues that events that occurred between the time of the unlawful contact and the time of the statements rendered the statements unreliable. We conclude that the juvenile court didn't abuse its discretion by admitting the statements under the child hearsay statute.

¶ 48    In both its oral ruling and written order, the juvenile court carefully weighed the *District Court* factors to determine that the statements were reliable. After noting that N.H.'s statements to all three witnesses were consistent, it found that no evidence supported the defense's assertion that N.H. had lied to get out of trouble. Instead, the court said that the stress of getting in trouble for vaping led her to spontaneously disclose a secret she had been maintaining. In other words, the court preliminarily found, based on the testimony presented at the child hearsay hearing, that the stress of keeping the abuse secret led to the vaping, not that getting

caught vaping provided a motive to fabricate. The court also explained there was no evidence that N.H.'s general character would diminish the reliability of the statements.

¶ 49 The testimony at the pretrial hearing supports these conclusions. Both Harris and Nuanes testified at the hearing that N.H. never indicated she had any bias or motive to lie about the allegations. Nuanes also testified that it's not uncommon for children who have had traumatic experiences to exhibit behavioral concerns at school. Given this testimony and the juvenile court's findings, the court didn't abuse its discretion by admitting the child hearsay.[3]

## III. Disposition

¶ 50 We affirm the juvenile court's delinquency adjudication.

JUDGE TOW and JUDGE LIPINSKY concur.

---

[3] Because it's not necessary to our disposition, we don't address A.H-A.'s independent contention that the juvenile court erred by admitting N.H.'s statements to Nuanes under CRE 803(4), the medical diagnosis hearsay exception. *Cf. Kelly v. Haralampopoulos*, 2014 CO 46, ¶ 43 n.9 (explaining that because it found statements to be admissible under CRE 803(4), it didn't need to "consider the district court's alternative rationale for admission under the residual hearsay exception").